FREIDA FOSTER, TAMI BORLAND, AND KATHY BOWEN, Plaintiffs v.
JASON M. CRANDELL AND PSIMED, P.A., Defendants

No. COA05-1140

(Filed 2 January 2007)

**1. Appeal and Error— appealability—partial summary judgment—Rule 54(b) certification—substantial right**

Although plaintiff Foster's appeal from the entry of partial summary judgment is properly before the Court of Appeals based on the trial court's Rule 54(b) certification, and all three plaintiffs' issues of punitive damages can be reviewed based on a substantial right to have the claim determined by the same judge and jury which heard the claim for compensatory damages, the remaining appeals are from interlocutory orders and are premature because: (1) there is no basis for appeal under Rule 54(b) of the exclusion of the negligent medicine management theory in the absence of a final judgment on the remaining plaintiffs' medical malpractice claim for relief, and the trial court's evidentiary ruling regarding plaintiffs' clinical pharmacist expert witness did not constitute a final judgment as a claim for relief; (2) with respect to both defendants' cross-appeal from the partial summary judgment order as well as defendants' appeal from the order denying their motion for judgment on the pleadings, no final judgment has been entered with respect to any defendant or claim for relief; (3) the remaining plaintiffs made no assertion that rulings regarding negligence in medicine management and the exclusion of an expert witness's testimony affect a substantial right; (4) defendants rely solely on a settlement agreement with an accompanying dismissal, meaning there was no possibility of a result inconsistent with a prior jury verdict or a prior decision by a judge; (5) defendants failed to demonstrate the existence of a substantial right with respect to their appeal when they base their claim of res judicata on a prior voluntary dismissal with prejudice that does not reflect a ruling on the merits by any jury or judge; and (6) defendants' request during oral arguments that the Court of Appeals grant certiorari to review their contentions falls short of the requirements of N.C. R. App. P. 21, and defendants have pointed to no circumstances that would justify the exercise of the Court of Appeals' discretion to suspend the requirements of Rule 21 under N.C. R. App. P. 2.

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

**2. Medical Malpractice— negligent supervision—statutes of limitation and repose**

Plaintiff Foster's claims against defendant medical director of a Christian counseling service for injuries allegedly received during counseling by a pastor constituted medical malpractice claims for purposes of the statutes of limitation and repose where plaintiff asserted personal injury claims against defendant director that are premised entirely upon defendant's negligent or reckless failure, as the supervising clinical psychiatrist, to adequately utilize his specialized knowledge and skill to supervise the pastor's counseling practices.

**3. Statutes of Limitation and Repose— medical malpractice claims—issue of material fact**

Plaintiff presented sufficient evidence to present genuine issues of material fact as to whether plaintiff's medical malpractice claims against the medical director of a Christian counseling service were filed within the three-year statute of limitations and the four-year statute of repose. N.C.G.S. § 1-15(c).

**4. Emotional Distress— intentional infliction—improper supervision—insufficient showing of outrageous conduct**

Plaintiff's evidence of the failure of defendant medical director of a Christian counseling service to properly supervise the pastor who counseled plaintiff did not constitute extreme and outrageous conduct necessary to establish a claim for intentional infliction of emotional distress where plaintiff did not suggest that defendant failed to disclose information about sexual misconduct by the pastor but contended that defendant failed to disclose that the N.C. Board of Licensed Counselors had demanded that the pastor cease the practice of counseling.

**5. Emotional Distress— negligent infliction—failure to supervise counselor**

Plaintiff presented a sufficient forecast of evidence to present a genuine issue of material fact supporting her claim for negligent infliction of emotional distress by defendant medical director of a Christian counseling service based upon his failure to properly supervise the pastor who counseled plaintiff where defendant does not contend that plaintiff failed to present sufficient evidence of negligence; a physician's affidavit explained how defendant's negligence caused plaintiff severe emotional distress and, with plaintiff's other summary judgment evidence, was suffi-

cient to raise a genuine issue of material fact as to whether it was reasonably foreseeable that severe emotional distress could result in the pastor's clients if defendant negligently failed to supervise him; and plaintiff offered evidence that she suffered diagnosable mental health conditions as a result of defendant's alleged negligence.

**6. Employer and Employee— negligent hiring or retention— insufficient evidence**

Defendant medical director of a Christian counseling service could not be liable for negligent hiring or retention of a pastor who counseled plaintiff where there was no evidence that defendant employed the pastor either as an employee or an independent contractor, and the evidence showed, at most, that defendant and the pastor were at one point co-employees.

**7. Damages and Remedies— punitive damages—requirement of participation**

A pastor's behavior in counseling plaintiffs, including any sexual misconduct, cannot serve as a basis for plaintiffs to obtain punitive damages from the medical director of a Christian counseling service because punitive damages may be awarded against a person only if that person participated in the conduct giving rise to the punitive damages.

**8. Damages and Remedies— punitive damages—insufficient evidence showing genuine issue**

Plaintiff Foster did not establish a claim for punitive damages where summary judgment was properly entered for defendant on her claims for intentional infliction of emotional distress and negligent supervision. Furthermore, the other two plaintiffs failed to established claims for punitive damages where they relied only upon their allegations of intentional infliction of emotional distress and "reckless supervision" and failed to present clear and convincing evidence of willful or wanton conduct in support of their claims.

Appeal by plaintiffs and cross-appeal by defendants from order entered 13 June 2005 by Judge Lindsay R. Davis, Jr. and appeal by defendants from order entered 20 August 2004 by Judge A. Moses Massey in Forsyth County Superior Court. Heard in the Court of Appeals 9 May 2006.

**FOSTER v. CRANDELL**

[181 N.C. App. 152 (2007)]

*Gray Newell, LLP, by Angela Newell Gray, for plaintiffs.*

*Carruthers & Roth, P.A., by Jack B. Bayliss, Jr. and William J. McMahon, for defendants.*

GEER, Judge.

This appeal arises out of an order of the trial court granting summary judgment to defendants in part, denying summary judgment in part, and excluding one of plaintiffs' expert witnesses. All parties have appealed. Because this is an interlocutory appeal, we have limited our review only to those questions over which we have jurisdiction: (1) the entry of summary judgment on all of Freida Foster's claims; and (2) the entry of summary judgment on plaintiffs' claims for punitive damages. We dismiss the parties' appeals with respect to the remaining issues since they are not properly the subject of a Rule 54(b) certification and do not affect a substantial right.

With respect to Foster's claims, we hold that she has presented sufficient evidence to raise an issue of fact as to whether she has complied with the statute of limitations and the statute of repose. We agree with defendants, however, that she has submitted sufficient evidence to support only a negligent infliction of emotional distress ("NIED") claim against defendant Jason M. Crandell, M.D. The trial court's entry of summary judgment is, therefore, reversed only as to Foster's NIED claim against defendant Crandell. We also uphold the trial court's entry of summary judgment as to plaintiffs' punitive damages claims based on plaintiffs' failure to forecast sufficient evidence to meet the standard for punitive damages set forth in N.C. Gen. Stat. § 1D-15(a) (2005).

Facts

In the early 1990s, Michael Rivest was the pastor of a small congregation of the Charismatic Episcopal Church and had established Isaiah 61 Ministries, Inc. ("Isaiah 61"), which was providing Christian counseling as the St. Matthew's Institute for Healing and Growth ("St. Matthew's Institute"). In 1994, Crandell agreed to work more closely with Rivest as a referral for any of Rivest's clients who could potentially benefit from medical management.

Crandell thereafter became the medical director of Isaiah 61, and a brochure for Isaiah 61 and St. Matthew's Institute listed him as the organization's psychiatrist. In that position, Crandell provided general advice on conducting a counseling practice, made periodic

review of Rivest's counseling reports, and answered counseling-related questions from Rivest and other counselors at Isaiah 61. From late 1996 until 2001, Crandell was also involved in a Bible-study group with Rivest and was Rivest's personal physician.

In June 1995, the North Carolina Board of Licensed Professional Counselors (the "Board") sent Rivest a letter directing him to cease and desist from providing counseling services, as he appeared to be engaged in the unlicensed practice of counseling in violation of the North Carolina Licensed Professional Counselors Act. Rivest responded to the Board by stating that he was under the "direct supervision" of Crandell. Crandell sent a similar letter to the Board, noting that he was employed by Isaiah 61 "to provide a supervisory relationship" to Rivest and, therefore, that Rivest was exempted from the Act's licensure requirement under N.C. Gen. Stat. § 90-332.1(a)(4) (2005) (stating that the Act does not apply to "[a]ny person counseling as a supervised counselor in a supervised professional practice"). The Board agreed to this arrangement and sent Rivest a letter stating that he was exempt from the Act.

In September 1996, however, the Board sent Crandell another letter indicating that it had reinterpreted the exemption found in N.C. Gen. Stat. § 90-332.1(a)(4) for supervised unlicensed counseling. The Board's new interpretation construed the exemption as applying only to counselors who were under temporary supervision while attempting to meet the licensure requirements of N.C. Gen. Stat. § 90-336(b)(2) (2005). According to Crandell, he then terminated his employment with Isaiah 61, but continued to review counseling session reports "[a]s a courtesy" until 1998. Plaintiffs, on the other hand, contend Crandell's supervisory relationship extended beyond 1998 for an unspecified period.

In December 1998, the Board sent Rivest another cease and desist letter, copied to Crandell, that again noted N.C. Gen. Stat. § 90-332.1(a)(4) no longer applied to Rivest's situation. Rivest's response, also copied to Crandell, stated that Isaiah 61 and St. Matthew's Institute were no longer charging fees for counseling services, and, therefore, were now exempt from the Act under N.C. Gen. Stat. § 90-332.1(a)(5) (stating that the Act does not apply to "[a]ny ordained minister or other member of the clergy while acting in a ministerial capacity who does not charge a fee for the service"). Foster later testified that, in lieu of fees, she and the other plaintiffs were, at that time, expected to make "donations" to Rivest for his counseling services.

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

Plaintiff Tami Borland began Christian counseling at the St. Matthew's Institute in 1994 in an effort to save her marriage. After first receiving counseling from another counselor, Borland began regular counseling with Rivest's wife, Kathleen. By 1996, however, Borland had begun counseling exclusively with Rivest and, by 1997, had joined his religious sect, the "Cistercian Oblates," which required that she wear a nun's habit.

In 1998, Rivest informed Borland that he believed she was experiencing "stigmata pain," which, according to Rivest, was "pain associated with that of Christ when Christ was nailed to the cross." Rivest told Borland that she needed medication and personally took her to see Crandell. Rivest explained that he "had a business relationship" with Crandell in which Crandell supervised Rivest's counseling sessions, reviewed his counseling notes and records, served as his advisor, and "sign[ed] off" on everything Rivest did.

While in Crandell's office, Rivest explained stigmata pain and provided Crandell "with literature and written documents that pertained to stigmata so that Dr. Crandell could educate himself . . . ." Crandell explained to Borland that Rivest was "very qualified" and that "he deferred to [Rivest's] recommendations on a regular basis with regard to diagnoses." Crandell also told Borland that, if Rivest believed she was experiencing stigmata pain, then that was surely the source of her problem. Crandell thereafter started Borland on a treatment plan that included medication and regular counseling sessions with Crandell to "talk[] about [the] pain associated with [her] stigmata."

In early 2000, Borland had a falling out with Rivest and terminated their relationship. Although she continued her sessions with Crandell, she became concerned that he was communicating with Rivest about her therapy without her permission. When Borland expressed this concern to Crandell in February 2000, he advised her that she should "seek treatment elsewhere because he did have an ongoing supervisory relationship" with Rivest. Crandell thereafter referred Borland to another mental health facility.

Plaintiff Kathy Bowen began grief counseling with Rivest in 1997, following the death of her mother. Rivest told Bowen that he and Crandell "had a psychiatric/counseling business" and that Crandell oversaw Rivest's counseling and advised Rivest with respect to all of his clients. Bowen was ultimately treated by both Rivest and Crandell. During several of her therapy sessions with Crandell, he indicated to Bowen that he was "aware of everything that was going

on with [her]" because "he shared information with . . . Rivest due to his supervisory relationship over Rivest." Bowen also joined the Cistercian Oblates and began wearing a nun's habit.

In July 1999, Rivest notified Bowen in writing that he had "consulted today with both our Medical Director and Clinical Supervisor regarding [her] case," and that they had concluded her therapy sessions should be terminated. A copy of the letter was sent to Crandell. Bowen ended her relationship with both Rivest and Crandell in 2000. Nevertheless, in April 2001, after not having treated Bowen as a patient for nearly six months and just after she had filed a complaint with the Charismatic Episcopal Church alleging sexual abuse by Rivest, Crandell unexpectedly called Bowen at home and asked if she "needed [any] medication."

In 1998, following the death of her fiancée, plaintiff Frieda Foster began grief counseling with Rivest. Rivest told her that Crandell provided Rivest with "outside supervision" and, according to Rivest, reviewed Rivest's counseling notes, was aware of matters discussed in therapy, and assisted Rivest with developing treatment plans. Rivest told Foster that, if it became necessary during her counseling for her to receive medication, Rivest could refer her to Crandell.

Foster continued to seek treatment with Rivest over the following year, visited his church, and soon also wore a nun's habit as a member of the Cistercian Oblates, which by that time consisted entirely of Rivest, Borland, Bowen, and Foster. By mid-1999, Foster had become estranged from her family, who believed she was developing an obsession with Rivest, and was attending counseling with Rivest five to six days per week. By 2000, Foster had given Rivest over $50,000.00.

Foster ultimately began to doubt the efficacy of Rivest's counseling services and terminated their relationship in 2001. Although Rivest had mentioned Crandell to Foster several times, she never had a conversation with Crandell pertaining to her therapy, and Crandell never took part in her counseling sessions with Rivest.

On 26 October 2001, Borland, Bowen, and Foster filed suit against Isaiah 61 and Rivest, each alleging: (1) Rivest had taken "certain indecent liberties" with them that "were intended for the sexual gratification of Rivest"; (2) they had engaged in "intimate acts" with Rivest "involuntarily and without consent"; and (3) Rivest had used "mind control techniques, threats and intimidation to illegally obtain money" from them. The parties settled in May 2004, and Borland,

Bowen, and Foster voluntarily dismissed their suit against Rivest and Isaiah 61 with prejudice on 9 June 2004.

On 27 December 2002, prior to their settlement with Rivest and Isaiah 61, Borland, Bowen, and Foster filed their initial suit (02 CVS 8569) against Crandell and his employer, PsiMed, P.A. In their complaint, plaintiffs again alleged inappropriate acts by Rivest, but also added allegations regarding Crandell's supervisory authority over Rivest's practices, claiming they were entitled to recover for the injuries they incurred under Rivest's counseling from Crandell as a result of his inadequate supervision of Rivest and from PsiMed as a result of its inadequate supervision of Crandell.

On 16 June 2003, plaintiffs voluntarily dismissed that action without prejudice pursuant to N.C.R. Civ. P. 41(a)(1)(i). They subsequently filed a second action (04 CVS 3741) against Crandell and PsiMed on 14 January 2004, containing substantially the same allegations. Plaintiffs amended their complaint on 16 September 2004 to provide additional detail with respect to Crandell's supervision of Rivest.

After answering plaintiffs' complaint, defendants moved for judgment on the pleadings, claiming that plaintiffs' prior settlement with Rivest and Isaiah 61 precluded recovery in this action. Judge A. Moses Massey denied defendants' motion on 20 August 2004. On 18 April 2005, following discovery, defendants moved for summary judgment, again arguing, among other grounds, that the prior settlement barred plaintiffs' recovery, but also seeking judgment on all of plaintiffs' claims based on the statute of limitations, the statute of repose, and insufficient evidence. In addition, defendants moved to exclude the testimony of plaintiffs' two expert witnesses: clinical pharmacist Thomas E. Henry, III and psychiatrist Dr. James F. T. Corcoran.

On 13 June 2005, Judge Lindsay R. Davis, Jr. entered an order (the "Partial Summary Judgment Order") and a detailed memorandum of decision. With respect to the effect of the prior settlement, Judge Davis ruled that defendants' motion for summary judgment presented no new arguments and resolution of the motion in defendants' favor on that basis would effectively overrule Judge Massey's order. For that reason, Judge Davis denied defendants' motion for summary judgment to the extent it relied on the prior settlement.

As for Foster's claims, the trial court determined that they were barred by the four-year statute of repose for medical malpractice

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

actions and, therefore, granted defendants summary judgment as to those claims. The court concluded that Borland's and Bowen's claims were not time-barred and that Borland and Bowen had presented sufficient evidence to defeat summary judgment except for their claim of negligence in the management of their medications.[1] The trial court further granted summary judgment as to plaintiffs' claims for punitive damages.

Plaintiffs and defendants have both appealed from the Partial Summary Judgment Order. Additionally, defendants have appealed from Judge Massey's order denying their motion for judgment on the pleadings.

## Interlocutory Nature of the Appeal

[1] We first observe that this appeal is interlocutory. An order is interlocutory if it does not dispose fully of a case, but rather requires further action by the trial court in order to finally determine the rights of all the parties involved in the controversy. *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Because the Partial Summary Judgment Order left intact Borland's and Bowen's claims for intentional and negligent infliction of emotional distress, negligent supervision, and medical malpractice, the parties' appeal is interlocutory. *See Liggett Group Inc. v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993) ("A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal.").

This Court has jurisdiction over an interlocutory appeal only if (1) the trial court certified the order for immediate review under North Carolina Rule of Civil Procedure 54(b), or (2) the order affects a substantial right that would be lost without immediate review. *Embler v. Embler*, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001). Here, the Partial Summary Judgment Order included a Rule 54(b) certification.

Rule 54(b), in pertinent part, provides:

When more than one claim for relief is presented in an action, . . . the court may enter a final judgment as to one or more but fewer than all of the claims . . . only if there is no just reason

---

1. In connection with the medical management issue, the trial court granted defendants' motion to exclude the testimony of Thomas Henry, a licensed pharmacist and one of plaintiffs' expert witnesses. The court, however, denied the motion to exclude the testimony of plaintiffs' second expert witness, James Corcoran, M.D.

for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C.R. Civ. P. 54(b). "Nonetheless, the trial court may not, by [Rule 54(b)] certification, render its decree immediately appealable if '[it] is not a final judgment.' " *Sharpe v. Worland,* 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (second alteration original) (quoting *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983)).

Since the Partial Summary Judgment Order entered a final judgment as to all of Foster's claims, her appeal is properly before this Court pursuant to the trial court's Rule 54(b) certification. We reach a different conclusion, however, with respect to the remaining parties' appeals.

Borland's and Bowen's claims premised upon Crandell's alleged negligent medication management do not represent a separate claim for relief, but rather constitute simply one factual theory, among others, as to how Crandell committed medical malpractice. In the absence of a final judgment on plaintiffs' medical malpractice claim for relief, there is no basis for appeal under Rule 54(b) of the exclusion of the negligent medicine management theory. Likewise, the trial court's evidentiary ruling regarding Mr. Henry does not constitute a final judgment as to a claim for relief.

Similarly, with respect to both defendants' cross-appeal from the Partial Summary Judgment Order as well as defendants' appeal from the order denying their motion for judgment on the pleadings, no final judgment has been entered with respect to any defendant or claim for relief. *See Yordy v. N.C. Farm Bureau Mut. Ins. Co.,* 149 N.C. App. 230, 231, 560 S.E.2d 384, 385 (2002) ("A defense raised by a defendant in answer to a plaintiff's complaint is not a 'claim' for purposes of Rule 54(b)."). Consequently, the trial court's Rule 54(b) certification is also ineffective to bring defendants' appeals properly before this Court. *See, e.g., Wood v. McDonald's Corp.,* 166 N.C. App. 48, 53, 603 S.E.2d 539, 543 (2004) (addressing, under Rule 54(b) certification, the plaintiff's appeal from an order granting the defendants partial summary judgment, but dismissing the defendants' cross-appeal as interlocutory).

We next turn to the question whether the parties have demonstrated the existence of a substantial right. The Supreme Court has

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

previously held that plaintiffs have a substantial right in having their "claim for punitive damages determined, if at all, before the same judge and jury which heard the claim for compensatory damages." *Tridyn Indus., Inc. v. Am. Mut. Ins. Co.*, 296 N.C. 486, 493, 251 S.E.2d 443, 448 (1979). Accordingly, we have jurisdiction to review the trial court's entry of summary judgment on the issue of punitive damages. As for Borland's and Bowen's arguments regarding negligence in medicine management and the exclusion of Mr. Henry's testimony, they have made no assertion that those rulings affect a substantial right. An appellant bears the burden of establishing the existence of a substantial right, *Embler*, 143 N.C. App. at 166, 545 S.E.2d at 262, and, as we have previously stressed, "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order . . . ." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Accordingly, we do not address Borland's and Bowen's arguments regarding negligent medicine management and the exclusion of Mr. Henry's testimony. They may assert those arguments on any appeal from the entry of a final judgment.

Defendants, on the other hand, have specifically argued that both the order denying their motion for judgment on the pleadings and the Partial Summary Judgment Order affect a substantial right because, according to defendants, plaintiffs' claims are barred by res judicata and collateral estoppel as a result of plaintiffs' settlement and voluntary dismissal with prejudice of their claims against Rivest and Isaiah 61. When a trial court enters an order rejecting the affirmative defenses of res judicata and collateral estoppel, the order "can affect a substantial right and may be immediately appealed." *McCallum v. N.C. Coop. Extension Serv. of N.C. State Univ.*, 142 N.C. App. 48, 51, 542 S.E.2d 227, 231, *appeal dismissed and disc. review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001). Incantation of the two doctrines does not, however, automatically entitle a party to an interlocutory appeal of an order rejecting those two defenses.

This Court has previously limited interlocutory appeals to the situation when the rejection of those defenses gave rise to a risk of two actual trials resulting in two different verdicts. *See, e.g., Country Club of Johnston County, Inc. v. U.S. Fid. & Guar. Co.*, 135 N.C. App. 159, 167, 519 S.E.2d 540, 546 (1999) (holding that an order denying a motion based on the defense of res judicata gives rise to a "substantial right" only when allowing the case to go forward without an appeal would present the possibility of inconsistent jury verdicts),

*disc. review denied*, 351 N.C. 352, 542 S.E.2d 207 (2000); *Northwestern Fin. Group, Inc. v. County of Gaston*, 110 N.C. App. 531, 536, 430 S.E.2d 689, 692 (holding that the defense of res judicata gives rise to a "substantial right" only when there is a risk of two actual trials resulting in two different verdicts), *disc. review denied*, 334 N.C. 621, 435 S.E.2d 337 (1993). One panel, however, has held that a "substantial right" was affected when defendants raised defenses of res judicata and collateral estoppel based on a prior federal summary judgment decision rendered on the merits. *See Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 589-90, 599 S.E.2d 422, 426 (2004).

We need not, however, reconcile *Country Club, Northwestern*, and *Williams* in this case, since they all involve a prior determination on the merits by either a jury or a judge—a circumstance lacking in this case. Because defendants rely solely on a settlement agreement with an accompanying dismissal, there is no possibility of a result inconsistent with a prior jury verdict or a prior decision by a judge. This case more closely resembles this Court's decisions in *Allen v. Stone*, 161 N.C. App. 519, 522, 588 S.E.2d 495, 497 (2003), and *Robinson v. Gardner*, 167 N.C. App. 763, 769, 606 S.E.2d 449, 453, *disc. review denied*, 359 N.C. 322, 611 S.E.2d 417 (2005).

In *Allen*, the plaintiff had previously twice dismissed her claims under N.C.R. Civ. P. 41(a)(1), with the result that the second dismissal was with prejudice. This Court rejected the defendants' contention that the trial court's order denying their motion to dismiss the action based on the prior dismissal affected a substantial right. *Allen*, 161 N.C. App. at 522, 588 S.E.2d at 497. The Court explained: "This Court has previously stated that avoidance of a trial, no matter how tedious or unnecessary, is not a substantial right entitling an appellant to immediate review." *Id. Robinson* involved the same procedural facts as *Allen*, but the defendants based their claim of a substantial right on their argument that the prior dismissal with prejudice gave rise to the defense of res judicata. This Court held that it was bound by *Allen*, but, in any event, explained that the fact defendants were specifically asserting the defense of res judicata did not entitle them to an interlocutory appeal because there was "no decision by any court or jury that could prove to be inconsistent with a future decision." *Robinson*, 167 N.C. App. at 769, 606 S.E.2d at 453.

Like the defendants in *Robinson* and *Allen*, defendants in this case base their claim of res judicata on a prior voluntary dismissal

with prejudice that does not reflect a ruling on the merits by any jury or judge. *Robinson* and *Allen* control and, therefore, we hold that defendants have failed to demonstrate the existence of a substantial right with respect to their appeal.

Defendants requested at oral argument before this Court that we nevertheless grant certiorari to review their contentions. An application for a writ of certiorari "shall contain a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the reasons why the writ should issue; and certified copies of the judgment, order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition. The petition shall be verified by counsel or the petitioner." N.C.R. App. P. 21(c). Defendants' request at oral argument falls short of the requirements of Rule 21. *See State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 321 (concluding footnote in appellate brief was insufficient to request writ of certiorari because it "clearly d[id] not meet the requirements set forth in Rule 21(c)"), *appeal dismissed*, 360 N.C. 73, 622 S.E.2d 626 (2005). Moreover, defendants have pointed to no circumstances that would justify the exercise of this Court's discretion to suspend the requirements of Rule 21 under N.C.R. App. P. 2. Defendants' appeal is, therefore, dismissed.

### Summary Judgment as to Plaintiff Foster

We first consider plaintiffs' argument that the trial court erred by granting defendants summary judgment on all of Foster's claims. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). Moreover, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)). This Court reviews orders granting summary judgment de novo. *Falk Integrated Techs., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

A. Statutes of Repose and Limitations

[2] The trial court concluded that Foster's claims were barred under the four-year statute of repose applicable to medical malpractice actions. Although the statute of limitations applicable to medical malpractice actions is three years, the General Assembly has further provided that "in no event shall [a medical malpractice] action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . ." N.C. Gen. Stat. § 1-15(c) (2005). *See also Bowlin v. Duke Univ.*, 119 N.C. App. 178, 183, 457 S.E.2d 757, 760 (noting that "a medical malpractice cause of action must be filed within three years of the date of the last act giving rise to the cause of action" and that, in any event, there is "a period of repose of four years"), *disc. review denied*, 342 N.C. 190, 463 S.E.2d 233 (1995).

On appeal, plaintiffs assert that Foster's claims do not constitute a medical malpractice action, but, rather, are personal injury claims that enjoy a 10-year statute of repose and for which the statute of limitations did not begin to run until Foster was diagnosed with injuries as a result of Crandell's improper conduct. *See* N.C. Gen. Stat. § 1-52(16) (2005) ("[F]or personal injury . . . the cause of action . . . shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."). We disagree.

A medical malpractice action is "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2005). Here, Foster has asserted personal injury claims against Crandell that are premised entirely upon Crandell's negligent or reckless failure, as the supervising clinical psychiatrist, to adequately utilize his specialized knowledge and skill to supervise Rivest's counseling practices.

As these claims all implicate the furnishing of Crandell's professional services in a supervisory context, they are sufficient to establish that plaintiff Foster's claims are medical malpractice claims for purposes of the statute of limitations and the statute of repose. *Compare Mozingo v. Pitt County Mem'l Hosp., Inc.*, 101 N.C. App. 578, 588-89, 400 S.E.2d 747, 753 (physician subject to malpractice

claim when he had supervisory responsibility over the physicians that actually provided plaintiffs with care), *disc. review denied,* 329 N.C. 498, 407 S.E.2d 537 (1991), *aff'd,* 331 N.C. 182, 415 S.E.2d 341 (1992), *with Taylor v. Vencor, Inc.,* 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (nursing home's failure to adequately supervise plaintiff's elderly mother while smoking cigarettes was not malpractice because such supervision did not require the furnishing of professional services), *disc. review denied,* 351 N.C. 646, 543 S.E.2d 889 (2000). The question remains, however, whether Foster has offered sufficient evidence that she asserted those claims in a timely fashion.

[3] It is undisputed that Crandell never treated Foster directly and that Foster bases her claims solely on his negligent supervision of Rivest. Consequently, in order to survive the motion for summary judgment based on the statutes of limitations and repose, Foster must point to evidence suggesting that Crandell continued to supervise Rivest after 27 December 1999—a date three years before plaintiffs filed their original complaint on 27 December 2002.

Borland's affidavit, submitted in opposition to summary judgment, states that Crandell advised her in February 2000 that she should "seek treatment elsewhere because *he did have an on-going supervisory relationship with Michael Rivest.*" (Emphasis added.) When this evidence is viewed in the light most favorable to Foster, the non-moving party, it is sufficient to raise an issue of fact as to whether Crandell's supervisory relationship with Rivest had continued into 2000. As a result, an issue of fact exists as to whether Foster's claims were filed within the three-year statute of limitations.

With respect to the longer four-year statute of repose, Rivest sent Bowen a letter on 13 July 1999—copied to Crandell—stating that Rivest had consulted with "our Medical Director and Clinical Supervisor regarding [her] case" and that Rivest and the Medical Director/Clinical Supervisor believed "that counseling at St. Matthew's Institute will not decrease [her] problems at this time." Crandell does not dispute that he was the Medical Director/Clinical Supervisor, but contends that this letter was merely an outdated "form letter" and any reference to Crandell should be disregarded. The fact that the letter was, in handwriting, specifically copied to Crandell runs counter to this argument. To accept defendants' contention would require that we construe the evidence in a light favorable to Crandell—an approach not permissible at the summary judgment stage.

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

In addition, Bowen's affidavit also provides that on "a number of occasions" after July 1999, Crandell indicated to her that he was familiar with her situation "because he shared information with Michael Rivest due to his supervisory relationship over Rivest." Indeed, Foster's own affidavit states that in mid-1999, she saw Crandell interact with Rivest at church functions and "come over for meetings." Collectively, this evidence is sufficient to raise an issue of fact as to whether Crandell was supervising Rivest after 27 December 1998, four years prior to the date plaintiffs filed their original complaint.

Thus, Foster submitted sufficient evidence to raise issues of fact as to both the statute of limitations and the statute of repose. Accordingly, the trial court's award of summary judgment to defendants on Foster's claims on statutes of limitations or repose grounds was in error.

B. Alternative Grounds for Upholding the Judgment

[4] Defendants nevertheless argue that, even if the trial court erred by concluding Foster's claims were time-barred, defendants were entitled to summary judgment as to Foster's claims for intentional infliction of emotional distress ("IIED"), NIED, negligent supervision by Crandell, and negligent supervision by PsiMed. If, as here, an appellee is not otherwise entitled to bring an appeal, the "appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the . . . order . . . from which appeal has been taken." N.C.R. App. P. 10(d). Defendants have properly cross-assigned error to the Partial Summary Judgment Order's failure to award them summary judgment on Foster's claims on grounds other than the statutes of limitations and repose. We, therefore, consider whether Foster has presented sufficient evidence on the merits of her claims to defeat summary judgment.[2]

"The essential elements of intentional infliction of emotional distress are '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress[.]' " *Burgess v. Busby*, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7 (alteration original) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276

---

2. We note that although Foster sued both PsiMed and Crandell, Foster makes no argument on appeal as to why summary judgment was improper as to PsiMed. Accordingly, Foster has abandoned her claims against PsiMed.

S.E.2d 325, 335 (1981)), *appeal dismissed,* 353 N.C. 525, 549 S.E.2d 216, *disc. review improvidently allowed,* 354 N.C. 351, 553 S.E.2d 679 (2001). We hold that Foster has failed to present sufficient evidence of the first element.

The question before us is not whether Rivest's improper sexual conduct constitutes "extreme and outrageous" behavior, but rather whether evidence of a failure by Crandell to properly supervise Rivest meets that test. " 'Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Johnson v. Colonial Life & Accident Ins. Co.,* 173 N.C. App. 365, 373, 618 S.E.2d 867, 872 (2005) (quoting *Guthrie v. Conroy,* 152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002)), *disc. review denied,* 360 N.C. 290, 627 S.E.2d 620 (2006). The determination whether conduct rises to the level of extreme and outrageous behavior is a question of law. *Id.,* 618 S.E.2d at 872-73.

Foster argues "that Crandell's willful failure to disclose critical information from the NC LPC Board constituted extreme and outrageous conduct." She does not suggest that Crandell failed to disclose any information of sexual misconduct by Rivest, but rather rests her argument on the failure to disclose the Board's demand that Rivest cease the practice of counseling. Foster cites no authority—and we have found none—supporting her contention that a failure to disclose information under the circumstances of this case "exceeds all bounds of decency tolerated by society . . . ." *West v. King's Dep't Store, Inc.,* 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). *Compare Burgess,* 142 N.C. App. at 400, 544 S.E.2d at 8 (holding that plaintiffs had sufficiently alleged a claim for IIED when defendant sent a letter to every physician having hospital admitting privileges in the county, including plaintiffs' primary care physicians, listing names and addresses of plaintiffs, who were jurors that rendered a verdict against him). Accordingly, defendants were entitled to summary judgment on Foster's IIED claim, and this portion of the Partial Summary Judgment Order is affirmed.

**[5]** An action for NIED has three elements: (1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) defendant's conduct, in fact, caused plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327

N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In order to meet the requirements of the first element, a plaintiff must establish that the defendant breached a duty of care owed to the plaintiff. *Guthrie*, 152 N.C. App. at 25, 567 S.E.2d at 411. Defendants do not contend that Foster has failed to present sufficient evidence of negligence,[3] but instead argue only that Foster presented no evidence of foreseeability of severe emotional distress or that Crandell's conduct in fact caused her severe emotional distress.

With respect to the foreseeability element, Foster must have presented evidence indicating that her "emotional distress was a reasonably foreseeable result of [Crandell's] negligent acts." *Robblee v. Budd Servs. Inc.*, 136 N.C. App. 793, 797, 525 S.E.2d 847, 850, *disc. review denied*, 352 N.C. 676, 545 S.E.2d 228 (2000). Defendants argue that "Foster has offered no evidence or explanation as to how defendant Crandell's alleged negligent supervision caused her serious emotional distress" because Crandell did not review her records or have any professional relationship with her and because Crandell concluded his supervision of Rivest in November 1998.

This analysis, however, views the evidence in a light most favorable to defendants. As set out above, the record contains evidence that would allow a jury to find that Crandell's supervisory relationship continued into at least 2000. Further, plaintiffs submitted an affidavit by James F. T. Corcoran, M.D., in which he stated:

> Assuming Crandell continued to supervise Rivest after December 3, 1998, my opinion is that Dr. Crandell breached his standard of care with regard to Freida Foster, not only because Rivest was not qualified to treat Foster, but also because he knew that the LPC board had ordered Rivest to cease and desist the practice of counseling. I am aware that Crandell was responsible for reviewing Rivest's counseling records based upon the information Crandell provided to the NCBLPC. If Crandell properly reviewed Rivest's counseling notes as he was required, he knew or should have known Rivest's clients, including Freida Foster. Therefore, he had a duty to advise her of Rivest's standing with the LPC board. If Crandell did not review Rivest's counseling records as was required by the NCBLPC, he breached the standard of care as it pertains to treatment and supervision.

---

3. *See Mozingo*, 331 N.C. at 190-91, 415 S.E.2d at 346 (doctor who assumed responsibility for supervising resident physicians owed duty of reasonable care to patients who were actually cared for by residents).

Corcoran added: "It is my further opinion that the plaintiffs' emotional trauma was exacerbated by the treatment that they received from Michael Rivest as well as Dr. Crandell. Crandell placed Rivest in a position to harm others, and Rivest in fact, did harm the plaintiffs." This testimony explains how Crandell's conduct caused Foster's emotional distress and—together with plaintiffs' other summary judgment evidence—is sufficient evidence to raise a genuine issue of material fact as to whether it was reasonably foreseeable that if Crandell negligently failed to supervise Rivest, severe emotional distress could result in Rivest's clients, including Foster.

Regarding the third element, our courts have defined "severe emotional distress" to "mean[] any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Ruark Obstetrics*, 327 N.C. at 304, 395 S.E.2d at 97. Put more succinctly, a plaintiff must "present[] evidence . . . of diagnosable mental health conditions." *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 274, 542 S.E.2d 346, 352, *disc. review denied*, 353 N.C. 725, 551 S.E.2d 437 (2001). Here, Foster offered evidence from both her therapist and Dr. Corcoran that she suffered diagnosable mental health conditions as a result of Crandell's alleged negligence. Under *Ruark Obstetrics* and *Fox-Kirk*, this evidence is sufficient to give rise to a genuine issue of material fact as to whether Foster suffered severe emotional distress as a result of Crandell's conduct.

Defendants were not, therefore, entitled to summary judgment with respect to the merits of Foster's claim for NIED. Accordingly, we reverse the trial court's grant of partial summary judgment to defendant Crandell on Foster's NIED claim.

[6] Finally, Foster contends that she offered sufficient evidence to make out a prima facie case of negligent supervision. With respect to this cause of action, Foster does not rely upon the theory recognized in *Mozingo*, 331 N.C. at 190-91, 415 S.E.2d at 346, but rather bases her claim on *Medlin v. Bass*, 327 N.C. 587, 590-91, 398 S.E.2d 460, 462 (1990) (omissions original) (internal quotation marks and emphasis omitted) (quoting *Walters v. Durham Lumber Co.*, 163 N.C. 536, 541, 80 S.E. 49, 51 (1913)):

North Carolina recognizes a claim for negligent employment or retention when the plaintiff proves:

FOSTER v. CRANDELL

[181 N.C. App. 152 (2007)]

"(1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, . . .; and (4) that the injury complained of resulted from the incompetency proved."

We cannot see how the *Medlin* theory of liability—a basis for imposing liability upon an employer for negligently hiring or retaining an employee—applies in this case.

The record contains no evidence that Crandell employed Rivest either as an employee or independent contractor. *See Little v. Omega Meats I, Inc.*, 171 N.C. App. 583, 586, 615 S.E.2d 45, 48 ("[I]n certain limited situations an employer may be held liable for the negligence of its independent contractor. Such a claim is not based upon vicarious liability, but rather is a direct claim against the employer based upon the actionable negligence of the employer in negligently hiring a third party."), *aff'd per curiam*, 360 N.C. 164, 622 S.E.2d 494 (2005). At most, Crandell was, at one point, a co-employee of Rivest. Consequently, there can be no argument that Crandell negligently employed or retained Rivest.

Although it might be tempting to analyze Foster's claims under *Mozingo*, a case not relied upon by Foster, our Supreme Court has recently reminded this Court that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant" by addressing an issue not raised or argued by the appellant. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam). To do otherwise would leave an appellee "without notice of the basis upon which an appellate court might rule." *Id.* Because *Medlin* is inapplicable under these facts and Foster has presented no other legal basis for her negligent supervision claim, we hold that summary judgment was properly entered on this claim.

In sum, we reverse the trial court's determination that Foster's claims are barred by the statutes of limitations or repose. We agree with Crandell, however, that Foster has presented insufficient evidence to support her claims for IIED and negligent supervision. We disagree, however, with respect to Foster's claim for NIED and, therefore, reverse the entry of summary judgment on that cause of action.

**FOSTER v. CRANDELL**

[181 N.C. App. 152 (2007)]

Punitive Damages

**[7]** All three plaintiffs argue that the trial court erred when it granted defendants summary judgment as to plaintiffs' claims for punitive damages. Under N.C. Gen. Stat. § 1D-15(a), punitive damages may be awarded only when a claimant proves that a defendant is liable for compensatory damages and that one of three "aggravating factors"— fraud, malice, or willful or wanton conduct—was both present and related to the injury for which compensatory damages were awarded. Our General Assembly has defined "malice" as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5) (2005). "Willful or wanton conduct," in turn, "means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). More specifically, it "means more than gross negligence." *Id.* The claimant must prove the existence of the aggravating factor by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b).

Further, "[p]unitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another." N.C. Gen. Stat. § 1D-15(c). Instead, "[p]unitive damages may be awarded against a person only if that person participated in the conduct . . . giving rise to the punitive damages . . . ." *Id.* As a result, Rivest's behavior—including any sexual misconduct—cannot serve as a basis for plaintiffs to obtain punitive damages from Crandell.

**[8]** Here, plaintiffs do not contend that either fraud or malice exists, but rather rely upon the "willful or wanton conduct" aggravating factor. In support of their claim for punitive damages, plaintiffs argue only that (1) "since they alleged a claim of intentional infliction of emotional distress, those allegations are sufficient to support a claim for punitive damages," and (2) "Crandell's conduct as it pertained to his reckless supervision of Rivest evidences a disregard and indifference to the rights and safety of others."

Since we have held that summary judgment was properly granted as to Foster's claims for IIED and negligent supervision, Foster has, on appeal, made no argument that would support her claim for punitive damages. We therefore hold the trial court properly entered summary judgment on Foster's claim for punitive damages.

With respect to Borland's and Bowen's IIED claims, we note that plaintiffs rely only upon their "allegations" of IIED. In opposing a motion for summary judgment, however, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e). Accordingly, the issue is whether plaintiffs were able to "produce a forecast of evidence demonstrating that [they] will be able to make out at least a prima facie case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Plaintiffs Borland and Bowen have not, however, made any argument on appeal as to what evidence supports their claim for IIED. Although evidence supportive of such a claim has been held sufficient to establish the necessary aggravating factor for a claim for punitive damages, *Watson v. Dixon*, 132 N.C. App. 329, 334, 511 S.E.2d 37, 41, *disc. review denied*, 351 N.C. 191, 541 S.E.2d 727 (1999), *aff'd*, 352 N.C. 343, 532 S.E.2d 175 (2000), plaintiffs' reliance upon mere allegations regarding their IIED claim rather than on evidence of that claim—including clear and convincing evidence of willful or wanton conduct—precludes us from reversing the trial court's determination that summary judgment was appropriate as to their punitive damages claim. It is not the responsibility of this Court to construct arguments for a party.

With respect to plaintiffs' "reckless supervision" claim, plaintiffs again cite to no particular evidence, but rather assert in conclusory fashion that "Crandell's conduct as it pertained to his reckless supervision of Rivest evidences a disregard and indifference to the rights and safety of others. This behavior falls within the scope of willful and wanton conduct." As this Court has previously held, "the mere characterization by [plaintiffs] of defendants' negligence as conscious and reckless [does] not create a genuine issue of material fact." *Lashlee v. White Consol. Indus., Inc.*, 144 N.C. App. 684, 694, 548 S.E.2d 821, 828, *disc. review denied*, 354 N.C. 574, 559 S.E.2d 179 (2001).

While plaintiffs have set out in the statement of facts the evidence that they contend supports their claim for negligent supervision and negligence in Crandell's professional treatment of Borland and Bowen, plaintiffs have not explained how that evidence rises above negligence—or even gross negligence—to reach the level of "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7). Further, plaintiffs have

IN RE L.B.

[181 N.C. App. 174 (2007)]

cited no authority supporting their conclusory claim that their evidence is sufficient to meet the requirements for willful or wanton conduct. *See* N.C.R. App. 28(b)(6) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). We, therefore, cannot conclude that the trial court erred in entering summary judgment for defendants as to plaintiffs' claim for punitive damages.

Conclusion

We dismiss defendants' appeal and plaintiffs Bowen's and Borland's appeal as to the rulings on Mr. Henry's testimony and their arguments regarding medicine management as interlocutory. We affirm the trial court's entry of summary judgment as to all of Foster's claims except for her claim for NIED against defendant Crandell. As to Foster's NIED claim against defendant Crandell, we reverse. We affirm the entry of summary judgment as to all plaintiffs' claims for punitive damages.

Affirmed in part; reversed in part; dismissed in part.

Judges WYNN and STEPHENS concur.

Judge STEPHENS concurred prior to 31 December 2006.