STRATES SHOWS, INC., a Delaware corporation, Plaintiff v. AMUSEMENTS OF AMERICA, INC., a New Jersey corporation; ROCKY MOUNT FAIR, INC., a North Carolina corporation; FAIR MANAGEMENT INC., a Florida Corporation; SMOKEY MOUNTAIN AMUSEMENTS, INC., a Delaware corporation; POWERS GREAT AMERICAN MIDWAYS, a North Carolina business entity; MORRIS J. VIVONA, SR.; MORRIS J. VIVONA, JR.; DOMINIC A. VIVONA, SR.; DOMINIC A. VIVONA, JR.; JOHN J. VIVONA; PHILIP A. VIVONA; SEBASTIAN J. VIVONA; CHRISTOPHER R. VIVONA; NORMAN Y. CHAMBLISS, III; MARGARET SCOTT PHIPPS; ROBERT E. PHIPPS; BOBBY C. McLAMB; LINDA J. SAUNDERS; MICHAEL E. BLANTON; ROBIN LEE TURNER; DEANN S. TURNER; BILLY JOE CLARK; LESLIE E. POWERS; and The Estate of RICHARD D. JANAS, Defendants

No. COA06-1363

(Filed 3 July 2007)

**1. Appeal and Error— appealability—collateral estoppel—substantial right**

Rejection of the affirmative defenses of collateral estoppel and res judicata affects a substantial right and may be immediately appealed, as here.

**2. Collateral Estoppel and Res Judicata— prior federal RICO litigation—proximate cause determined—subsequent state unfair practices claim—estoppel**

The trial court erred by denying defendants' motions to dismiss claims arising from the award of a contract to operate the midway at the State Fair. Plaintiff was collaterally estopped from relitigating the element of proximate cause as it relates to not receiving the midway contract.

Appeal by defendants from an order entered 26 June 2006 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 9 May 2007.

*Blanchard, Miller, Lewis & Styers, P.A., by E. Hardy Lewis, for plaintiff-appellee.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for Amusements of America, Inc. and the Vivonas, defendants-appellants.*

*Tharrington Smith, LLP, by F. Hill Allen, IV, for Margaret Scott Phipps and Robert E. Phipps, defendants-appellants.*

*Smith Moore LLP, by Alan W. Duncan, Shannon R. Joseph, and S. Montaye Sigmon, for Norman Y. Chambliss, III and Rocky Mount Fair, Inc., defendants-appellants.*

JACKSON, Judge.

Strates Shows, Inc. ("Strates"), a Florida-based family business, performed the contract for provision of the midway at the annual North Carolina State Fair uninterrupted for more than fifty years. In 1999, Jim Graham, the long-time Commissioner of Agriculture, announced that he would not seek re-election for the 2000-2004 term. At some point after Commissioner Graham's announcement, defendant Amusements of America ("AOA"), a New Jersey based midway operator, including its principals, the individual Vivona family defendants ("Vivonas"), initiated a conspiracy with a long-time North Carolina-based business associate, defendant Norman Chambliss ("Chambliss"). The purpose of the conspiracy was to secure the State Fair midway operation contract for AOA. This conspiracy, and the illegal acts perpetrated in furtherance of it, culminated in a major public corruption scandal.

The criminal acts of defendants are numerous and complex, but include acts such as the making and accepting of bribes, money laundering, the structuring of transactions to avoid reporting requirements, state procurement conflict of interest violations, and potential election law violations. Defendant Meg Scott Phipps ("Phipps") was elected to replace Commissioner Graham, and in 2001 she set about forming a process by which the State of North Carolina would choose a midway operator for the 2002 State Fair.

Commissioner Phipps decreed the formation of a "Fair Advisory Committee" ostensibly to hear and vote on presentations made by various bidders for the midway operation. Strates presented a bid for the midway contract to the Fair Advisory Committee, along with seven other bidders, including AOA. According to an investigation of the vote taken by the committee, Strates was the choice to receive the midway contract. Commissioner Phipps did not attend any of the formal bid presentations. Rather, she was advised of the various presentations by Chambliss, and he recommended that the Commissioner choose AOA as the 2002 midway operator.

Commissioner Phipps ultimately awarded the midway contract to AOA, which was not the choice of the Fair Advisory Committee, but which had been deeply involved in the above described conspiracy. Strates challenged the Commissioner's award of the 2002 midway contract in the Office of Administrative Hearings ("OAH"), ultimately settling the action with entities who are not parties to the instant case. Based upon investigations performed by the State Bureau of

STRATES SHOWS, INC. v. AMUSEMENTS OF AM., INC.

[184 N.C. App. 455 (2007)]

Investigation, and the Federal Bureau of Investigation, several of the individual defendants including Michael Blanton, Chambliss, Bobby McLamb, Meg Scott Phipps, Linda Saunders, and M. Vivona, Jr. faced prosecutions, and subsequently pled guilty to or were convicted of various state and federal offenses.[1]

On 23 August 2004, Strates filed a complaint in the United States District Court for the Eastern District of North Carolina. The basis for federal subject matter jurisdiction was a single federal claim, which Strates asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Plaintiff also asserted several state claims including fraud, tortious interference with business relations and prospective economic advantage, unfair competition and unfair and deceptive trade practices, conversion, civil conspiracy, and a claim for punitive damages. Specifically, Strates sought damages based upon an alleged deprivation of the 2002 midway contract and its lost business and profits as a result, the costs in preparing Strates' bid proposal, and the legal fees and costs associated with Strates' appeal to OAH.

In an order filed 25 July 2005, Chief Judge for the Eastern District Louise W. Flanagan dismissed Strates' RICO claim for a lack of standing. *Strates Shows, Inc. v. Amusements of America, Inc.,* 379 F. Supp. 2d 817 (E.D.N.C. 2005). The federal District Court specifically found that with respect to the RICO claim involving the 2002 midway

---

1. Michael Blanton pled guilty in federal court to one count of Conspiracy to Commit Obstruction of Justice and Tampering with a Witness. *United States v. Michael Eugene Blanton,* No. 5:03-CR-169-H (Sept. 23, 2003). Norman Chambliss, III, pled guilty in federal court to one count of Obstruction of Justice. *United States v. Norman Y. Chambliss, III,* No. 5:04-CR-59-H (Apr. 5, 2004). Bobby McLamb pled guilty in federal court to one count of Conspiracy to Commit Mail Fraud, Wire Fraud, and to Structure Deposits, and one count of Extortion Under Color of Official Right and Aiding and Abetting. *United States v. Bobby C. McLamb,* No. 5:03-CR-58-2H3 (Mar. 3, 2004). Meg Scott Phipps was found guilty of violating our state's election laws, along with other crimes including perjury, and she also plead guilty in federal court to one count of Conspiracy to Commit Offenses Against the United States, two counts of Scheme and Artifice to Deprive Others of Right of Honest Services through Wire Fraud and Aiding and Abetting, and two counts of Extortion Under Color of Official Right and Aiding and Abetting. *United States v. Meg Scott Phipps,* No. 5:03-CR-263-H (Mar. 2, 2004). Linda Saunders pled guilty in federal court to one count of Conspiracy to Commit Mail Fraud, Wire Fraud, and to Structure Deposits, two counts of Extortion Under Color of Official Right and Aiding and Abetting, two counts of Money Laundering and Aiding and Abetting, and one count of Structuring Transactions to Evade Reporting Requirements and Aiding and Abetting. *United States v. Linda Johnson Saunders,* No. 5:03-CR-58-1H3 (Mar. 3, 2004). M. Vivona, Jr. pled guilty in federal court to one count of Obstruction of Justice. *United States v. Morris Vivona, Jr.,* 5:04-CR-196-H (June 7, 2004).

contract, Strates "points to no property interest which it had in the 2002 midway contract . . . prior to" the illegal activity by defendants. *Id.* at 826. In addition, the court held that Strates had "not alleged an injury proximately caused by defendants' illegal activity." *Id.* at 828. Weighing against a finding of proximate cause was the existence of several intervening factors, including other bidders who were not involved in the conspiracy, the lack of a set procedure or criteria for the selection of the midway contract, and administrative discretion. *Id.* Ultimately the court held that the relationship between defend-ants' illegal conduct and the harm to Strates was indirect and specu-lative, and therefore Strates had failed to establish that any injury suf-fered by it was proximately caused by defendants' actions. *Id.* at 832. As such, plaintiff lacked standing to assert a RICO claim based upon the loss of the midway contract. *Id.* With respect to Strates' RICO claim seeking damages for its costs in preparing its bid, the district court held that the costs "do not meet even the cause-in-fact require-ment for RICO injury[,]" and that Strates would have incurred these costs not withstanding defendants' wrongful conduct. *Id.* Similarly, the court held that Strates' legal fees and costs associated with appealing the contract award to OAH "do not satisfy the standing requirement of RICO." *Id.* at 833. The court held that "these legal fees and costs are not 'direct' injury flowing from defendants' illegal con-duct, but rather, at best, 'indirect' injury which [Strates] did not auto-matically incur, but chose to incur, in mitigating the effect of defend-ants' conduct." *Id.* The district court went on to hold that "while the illegal conduct by defendants may have been the cause-in-fact of [Strates'] legal fees and costs, it was not the 'proximate cause' of such fees and costs." *Id.* With respect to the state claims alleged, however, the district court declined to exercise supplemental jurisdiction, and dismissed them without prejudice. *Id.* Strates initially appealed the dismissal of the RICO claim to the United States Court of Appeals for the Fourth Circuit. However, prior to briefing in the Court of Appeals, Strates elected to proceed only on its state law claims, and filed an unopposed motion to dismiss its appeal, which was granted on 25 October 2005.

On 28 November 2005, Strates filed the instant action in Wake County Superior Court. The factual allegations and claims alleged in the state action were almost identical to the federal action, with the exception of the RICO claim which had been alleged in the federal action. In the state action, Strates alleged claims for unfair competi-tion and unfair and deceptive trade practices, tortious interference with business relations and prospective economic advantage, civil

conspiracy, fraud, as well as seeking punitive damages. On 1 February 2006, defendants AOA and the Vivonas filed a motion to dismiss based upon Rules 12(b)(1) and 12(b)(6) of our Rules of Civil Procedure, and collateral estoppel. The Phipps defendants filed a motion to dismiss on 14 March 2006, based upon a lack of standing, Rules 12(b)(1) and 12(b)(6), estoppel, and the ruling of the federal district court which held that Strates was unable to show causation and injury. Defendants Chambliss and Rocky Mount Fair, Inc. filed a motion to dismiss on 12 May 2006, based upon Rules 12(b)(1) and 12(b)(6). In an order filed 26 June 2006, the trial court denied defendants' motions. Defendants now appeal from the 26 June 2006 order denying their various motions.

[1] On appeal, defendants argue the trial court erred in denying the various motions to dismiss where, in a fully-argued action arising out of the same alleged facts, a court of competent jurisdiction decided that Strates has not sufficiently alleged any legally cognizable injury and that its alleged injuries could not have been proximately caused by the alleged conduct of defendants.

Generally, the denial of a party's motion to dismiss is interlocutory, and thus is not immediately appealable. *McCarn v. Beach*, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404 (1998). "An order is interlocutory if it does not dispose fully of a case, but rather requires further action by the trial court in order to finally determine the rights of all the parties involved in the controversy." *Foster v. Crandell*, 181 N.C. App. 152, 160, 638 S.E.2d 526, 532 (2007) (citing *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). However, this Court has jurisdiction over an interlocutory appeal when the order appealed from affects a substantial right which would be lost absent an immediate appeal. *Id.*; *see also* N.C. Gen. Stat. § 1-277(a) (2005); N.C. Gen. Stat. § 7A-27(d)(1) (2005). We previously have held that "[w]hen a trial court enters an order rejecting the affirmative defenses of res judicata and collateral estoppel, the order 'can affect a substantial right and may be immediately appealed.' " *Foster*, 181 N.C. App. at 162, 638 S.E.2d at 533 (quoting *McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 51, 542 S.E.2d 227, 231 (2001)). Thus, based upon the facts of the instant case, we hold defendants' appeal is properly before us, as the trial court denied their motions to dismiss based in part on a rejection of defendants' affirmative defense of collateral estoppel.

The standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo*. *Fuller v. Easley*, 145 N.C.

App. 391, 395, 553 S.E.2d 43, 46 (2001). For a motion to dismiss based upon Rule 12(b)(6), the standard of review is whether, construing the complaint liberally, " 'the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (citation omitted).

**[2]** Defendants contend Strates lacks standing, and now is collaterally estopped from bringing the claims in the instant action because the federal district court previously held that Strates lacked standing to bring its RICO claim due to a failure to establish that defendants' illegal activity was the proximate cause of Strates' alleged injuries. In order for a plaintiff to have standing to bring a claim, the plaintiff must establish three elements:

> "(1) 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992)), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). "Standing most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or caselaw." *Id.*

" 'The companion doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) have been developed by the courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.' " *Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 591, 599 S.E.2d 422, 427 (2004) (quoting *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993)).

> "Where the second action between two parties is upon the same claim, the prior judgment serves as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action. Where the second action between the same parties is upon a different claim, the prior judgment serves as a bar only as to issues actually litigated and determined in the original action."

*Id.* (quoting *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161). Under the doctrine of collateral estoppel,

> "also known as 'estoppel by judgment' or 'issue preclusion,' the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding."

*Id.* (quoting *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004)). "Collateral estoppel bars 'the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim.' " *Id.* at 591-92, 599 S.E.2d at 427-28 (quoting *Whitacre*, 358 N.C. at 15, 591 S.E.2d at 880). The doctrine also applies when "the first adjudication is conducted in federal court and the second in state court." *McCallum*, 142 N.C. App. at 52, 542 S.E.2d at 231 (citation omitted).

We begin our analysis by holding that Strates "enjoyed a full and fair opportunity to litigate" the issue of proximate cause in the prior federal action. In the federal action, Strates filed its complaint, defendants filed their motions to dismiss, and Strates responded to the motions. Strates initially appealed from the federal district court's dismissal of the action, however Strates chose to dismiss the appeal. Thus, the ruling of the federal district court is a final judgment as to the issues decided by it. Therefore, we must now determine whether the proximate cause element required for a RICO claim is the same as for a claim under our State's Unfair and Deceptive Practices Act and whether the federal district court's ruling collaterally estops Strates from pursuing the instant action.

In the prior federal action, the federal district court held that Strates failed to allege facts sufficient to satisfy the proximate cause element of its RICO claim. The federal RICO Act, 18 U.S.C. § 1961, *et seq.*, prohibits certain conduct involving "a pattern of racketeering activity." 18 U.S.C. § 1962(b) (2000 ed.). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the Act's substantive restrictions." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 164 L. Ed. 2d 720, 726 (2006) (quoting 18 U.S.C. § 1964(c)). In *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 544 (1992), the United States Supreme Court "held that a plaintiff may sue under § 1964(c) only if

the alleged RICO violation was the proximate cause of the plaintiff's injury." *Anza*, 547 U.S. at 453, 164 L. Ed. 2d at 726. The Court in *Holmes* explained that section 1964(c) "provides a civil cause of action to persons injured 'by reason of' a defendant's RICO violation." *Anza* at 456, 164 L. Ed. 2d at 728. The *Holmes* court held that "the phrase 'by reason of' could be read broadly to require merely that the claimed violation was a 'but for' cause of the plaintiff's injury." *Anza* at 456, 164 L. Ed. 2d at 728 (citing *Holmes*, 503 U.S. at 265-66, 117 L. Ed. 2d at 542-43). In *Anza v. Ideal Steel Supply Corp.*, the Supreme Court interpreted the holding of *Holmes*, and held that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 461, 164 L. Ed. 2d at 731.

Our State's Unfair and Deceptive Practices Act ("UDP"), found in North Carolina General Statutes, section 75-1 *et seq.*, provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2005). Section 75-16 of the Act "creates a cause of action to redress injuries resulting from violations of Chapter 75 of the General Statutes and provides that any damages recovered shall be trebled." *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 539, 643 S.E.2d 410, 416 (2007) (citing N.C. Gen. Stat. § 75-16 (2005)). "These two statutes establish a private cause of action for consumers." *Id.* at 539, 643 S.E.2d at 416 (citing *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000)). "An unfair and deceptive trade practice claim requires plaintiffs to show: (1) that defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) plaintiffs were injured thereby. Plaintiffs must also establish they 'suffered actual injury as a proximate result of defendants' [unfair or deceptive act].' " *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998) (citations omitted).

Our courts have defined "proximate cause" as

"a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed."

*Williamson v. Liptzin,* 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000) (citation omitted); *accord Loftis v. Little League Baseball, Inc.,* 169 N.C. App. 219, 222, 609 S.E.2d 481, 484 (2005); *see also* Black's Law Dictionary 234 (8th ed. 2004) (proximate cause is "[a] cause that directly produces an event and without which the event would not have occurred").

Upon reviewing the elements required for both a RICO and an UDP claim, we are able to see that each claim requires a showing by the plaintiff that he or she suffered an injury that was a proximate result of the defendant's improper actions, whether the improper actions constitute racketeering or unfair or deceptive acts or practices. Both Acts require a showing that the plaintiff suffered an actual injury, and that the defendant's improper, or illegal conduct was a cause in fact of the plaintiff's injuries.

In both the prior federal action, and the instant state action, Strates seeks damages for the same injuries: the loss of the 2002 midway contract; its costs in preparing a bid for the 2002 midway contract; and the legal fees and costs associated with its appeal to OAH. The federal court previously determined that Strates' "claim that it was injured by not being awarded the midway contract . . . fails both because it is premised upon an expectancy interest and because the injury is *not* proximately connected" to the defendants' illegal conduct. *Strates,* 379 F. Supp. 2d at 826 (emphasis added). As the federal court has previously held that Strates failed to establish the element of proximate cause, as it relates to the alleged injury of not receiving the midway contract, we therefore hold Strates is collaterally estopped from relitigating this same issue in the instant state action.

The element of causation in Strates' federal RICO claim is the same as in the state UDP claim, and thus the state claims must fail based upon the federal court's prior ruling on the issue of causation. At no time was Strates actually awarded, or promised, the 2002 midway contract. Strates' state action fails to establish that but for defendants' illegal conduct, Strates would have been awarded the contract. Strates cannot show that it suffered any actual injury as a result of the illegal conduct, only that it was not awarded the midway contract. Complicating Strates' claim is the fact that Strates and AOA were not the only bidders vying for the 2002 midway contract—there were six other bidders in addition to Strates and AOA. The fact that defendants participated in an illegal conspiracy surrounding the 2002 midway contract does not create an automatic claim under our

State's UDP; Strates still must show a causal relationship between the alleged improper act and the injury claimed. Even assuming defendants' conduct constitutes actionable conduct pursuant to section 75-1.1 *et seq.*, Strates has failed to show that it suffered any actual injury as a matter of law that was proximately caused by the illegal conduct.

With respect to the damages Strates suffered as a result of preparing the bid for the midway contract and in pursuing the appeal through OAH, we hold the federal district court's ruling also finally determined this issue. With or without defendants' illegal conduct, Strates would have incurred the costs to prepare its bid for the midway contract. Thus, Strates cannot show that any costs incurred in preparing the bid were proximately caused by defendants' illegal conduct. With respect to the costs and fees incurred in pursuing the administrative hearing with OAH, we hold the federal district court's ruling also finally determined this issue. Strates chose to incur these costs as a result of not being awarded the midway contract. As the federal court determined, "while the illegal conduct by defendants may have been the cause-in-fact of plaintiff's legal fees and costs, it was not the 'proximate cause' of such fees and costs." *Strates*, 379 F. Supp. 2d at 833.

We therefore hold the trial court erred in denying defendants' motions to dismiss, as Strates was collaterally estopped from asserting claims based upon issues which were finally decided in a prior judicial proceeding between the same parties.

Reversed.

Judges McGEE and LEVINSON concur.