CALABRIA, Judge.
 

 *472
 
 Gilbert Breedlove ("Breedlove") and Thomas Holland ("Holland") (collectively, "plaintiffs") brought this action against the North Carolina Administrative Office of the Courts ("AOC") and its Interim Director, Marion R. Warren ("Warren") (collectively, "defendants"). Plaintiffs appeal the trial court's grant of defendants' motion to dismiss. We affirm.
 

 *473
 

 I Factual and Procedural Background
 

 Plaintiffs served as magistrates, Breedlove from Swain County and Holland from Graham County. Both identify as devout Christians.
 

 In the autumn of 2014, the Supreme Court of the United States, and the Court of Appeals for the Fourth Circuit, established that states within the Fourth Circuit, including North Carolina, cannot decline to marry a same-sex couple, nor can they decline to recognize an otherwise lawful marriage of a same-sex couple from a different state.
 
 See
 

 Bostic v. Schaefer
 
 ,
 
 760 F.3d 352
 
 (4th Cir.),
 
 cert. denied
 
 , --- U.S. ----,
 
 135 S.Ct. 308
 
 ,
 
 190 L.Ed.2d 140
 
 (2014). This holding was subsequently and explicitly affirmed under North Carolina law.
 
 See
 

 Gen. Synod of the United Church of Christ v. Resinger
 
 ,
 
 12 F.Supp.3d 790
 
 , 791 (W.D.N.C. 2014) (holding that "any ... source of state law that operates to deny same-sex couples the right to marry in the State of North Carolina ... [is,] in accordance with
 
 Bostic,
 
 supra,
 

 unconstitutional").
 

 On 13 October 2014, the Director of AOC, at the time John Smith ("Smith"), issued a guidance memorandum (the "Interim Guidance Memo") to various North Carolina judicial employees, including,
 
 inter alia
 
 , plaintiffs. This document stated that the AOC had "received a sufficient number of requests for guidance given the recent federal ruling on same-sex marriages to justify this interim memorandum of guidance to magistrates." This document stated that magistrates should immediately begin conducting marriage ceremonies for same-sex couples, and that such marriages "should not be delayed or postponed while awaiting further clarification of other questions or issues." The document further advised recipients that a more detailed memorandum was forthcoming.
 

 On 14 October 2014, AOC issued a second memorandum (the "Same-Sex Marriages Memo") to various North Carolina judicial employees, including,
 
 inter alia
 
 , plaintiffs. In this document, AOC presented various questions, and answers thereto, on the issue of magistrates performing same-sex marriages. In response to the question as to whether a magistrate who performs other marriages may refuse to marry a same-sex couple for whom a marriage license had been issued, the document stated that a magistrate's refusal to lawfully marry a same-sex couple would "[violate] the equal protection clause of the U.S. Constitution" and further "would
 
 *895
 
 constitute a violation of the oath and a failure to perform a duty of the office." In response to the question as to the consequences of refusal of a magistrate to marry a same-sex couple, the document stated that "refusal is grounds for suspension or removal from office,
 
 *474
 
 as well as potential criminal charges[,]" and that North Carolina law "makes clear that this criminal provision remains enforceable in addition to the procedures for suspension and removal under G.S. 7A-173." In response to the question of whether a magistrate's reason for refusal made a difference to the outcome, the document stated that it did not.
 

 On 5 November 2014, AOC composed a letter to Senator Phil Berger ("Berger"), President
 
 Pro Tempore
 
 of the North Carolina Senate. Berger had requested that AOC revise the Same-Sex Marriages Memo, and suggested that the document violated the religious workplace protections of federal Title VII. In its letter in response to Berger, AOC stated that "our magistrates are affirmatively bound by [federal] rulings in exercising their official powers," and that the document was issued to judicial employees in order to ensure that they are "aware of the potential consequences for failure to comply with the injunction and follow the law."
 

 Plaintiffs sought accommodations so that they would not be forced to violate their religious beliefs by performing same-sex marriages. Plaintiffs' requests for accommodation were denied, and plaintiffs ultimately resigned.
 

 On 6 April 2015, plaintiffs brought the underlying action against AOC and Smith. Plaintiffs' complaint alleged violations of plaintiffs' rights under the North Carolina Constitution, and sought a declaratory judgment that AOC's policy of forcing plaintiffs to perform same-sex marriages was unconstitutional, and a preliminary and permanent injunction against being forced to perform same-sex marriages. Plaintiffs also sought to be reappointed as magistrates, and to receive back pay and benefits for the time spent resigned from their posts.
 

 On 11 May 2015, Smith and AOC filed a motion to dismiss plaintiffs' complaint, pursuant to,
 
 inter alia
 
 , Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure. Specifically, the motion alleged that plaintiffs "have failed to allege an actual case or controversy, in that neither the AOC Director nor AOC has any authority over magistrates, and Plaintiffs, therefore, lack standing;" and that plaintiffs failed to state a claim upon which relief can be granted, in that the memoranda at issue "did not constitute a mandate to magistrates" and "[did] not violate either plaintiff's rights[,]" and that Smith was "entitled to qualified immunity."
 

 Between the filing of this motion and the filing of the trial court's order, Smith stepped down from his role, and Warren was appointed Interim Director of AOC. Warren replaced Smith, in his official capacity, as a defendant in this case.
 

 *475
 
 On 19 September 2015, the trial court entered an order on defendants' motion to dismiss. In its order, the trial court found and held that it "lacks subject matter jurisdiction in that there is no actual case or controversy, because the defendants have no power to nominate, appoint, remove, or otherwise control magistrates, nor do the defendants have the power to institute criminal prosecutions against magistrates for failure to perform their duties." The trial court granted defendants' motion to dismiss pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure.
 

 Plaintiffs appeal.
 

 II. Motion to Dismiss for Lack of Standing
 

 In their first argument, plaintiffs contend that the trial court erred in granting defendants' motion to dismiss for lack of standing. We disagree.
 

 A. Standard of Review
 

 "In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party."
 
 Mangum v. Raleigh Bd. of Adjust.
 
 ,
 
 362 N.C. 640
 
 , 644,
 
 669 S.E.2d 279
 
 , 283 (2008).
 

 B. Analysis
 

 "As the party invoking jurisdiction, plaintiffs have the burden of proving the
 
 *896
 
 elements of standing."
 
 Neuse River Found., Inc. v. Smithfield Foods, Inc.
 
 ,
 
 155 N.C.App. 110
 
 , 113,
 
 574 S.E.2d 48
 
 , 51 (2002) (citation omitted). In order for a plaintiff to demonstrate standing, he must show three things:
 

 (1) injury in fact-an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 

 Strates Shows, Inc. v. Amusements of Am., Inc.
 
 ,
 
 184 N.C.App. 455
 
 , 460,
 
 646 S.E.2d 418
 
 , 423 (2007) (citations and quotations omitted).
 

 Plaintiffs contend that they had standing to bring their claims against defendants because (1) defendants were in a position of practical and actual authority over plaintiffs, (2) defendants exerted authority over North Carolina magistrates, including plaintiffs, and (3) plaintiffs resigned from their positions as magistrates due to defendants' exertions
 
 *476
 
 of authority. For the purpose of defendants' motion to dismiss, these allegations are taken as true.
 

 The North Carolina Constitution provides for the appointment of magistrates as follows:
 

 For each county, the senior regular resident Judge of the Superior Court serving the county shall appoint from nominations submitted by the Clerk of the Superior Court of the county, one or more Magistrates who shall be officers of the District Court.
 

 N.C. Const., art. IV, § 10. This provision is further codified in the North Carolina General Statutes.
 
 See
 
 N.C. Gen. Stat. § 7A-171 (2015).
 

 The General Statutes also provide procedures for the removal of magistrates:
 

 A magistrate may be suspended from performing the duties of his office by the chief district judge of the district court district in which his county is located, or removed from office by the senior regular resident superior court judge of, or any regular superior court judge holding court in the district or set of districts as defined in G.S. 7A-41.1(a) in which the county is located. Grounds for suspension or removal are the same as for a judge of the General Court of Justice.
 

 N.C. Gen. Stat. § 7A-173(a) (2015).
 

 Lastly, the General Statutes provide for the administrative and supervisory authority over magistrates:
 

 The chief district judge, subject to the general supervision of the Chief Justice of the Supreme Court, has administrative supervision and authority over the operation of the district courts and magistrates in his district. These powers and duties include, but are not limited to, the following:
 

 ...
 

 (4) Assigning matters to magistrates, and consistent with the salaries set by the Administrative Officer of the Courts, prescribing times and places at which magistrates shall be available for the performance of their duties; however, the chief district judge may in writing delegate his authority to prescribe times and places at which magistrates in a
 
 *477
 
 particular county shall be available for the performance of their duties to another district court judge or the clerk of the superior court, or the judge may appoint a chief magistrate to fulfill some or all of the duties under subdivision (12) of this section, and the person to whom such authority is delegated shall make monthly reports to the chief district judge of the times and places actually served by each magistrate.
 

 N.C. Gen. Stat. § 7A-146(4) (2015).
 

 These statutes, taken together, make it explicit that the appointment of magistrates is within the authority of the Senior Resident Superior Court Judge; that the suspension of magistrates is within the authority of the Chief District Court Judge; that the removal of magistrates is within the authority the Senior Resident Superior Court Judge, or any superior court judge holding court in the relevant county; and that administrative and supervisory authority over magistrates is vested in the Chief District Court Judge, pursuant to the general supervision of the Chief Justice of the Supreme Court. Nowhere
 
 *897
 
 in any of these statutes is AOC listed as a party with any authority to appoint, sanction, suspend, remove, or generally supervise magistrates.
 

 Plaintiffs contend that defendants nonetheless possess this authority, due to various statutory provisions that grant AOC various ministerial powers with respect to judicial employees and officials, including magistrates. However, plaintiffs' complaint was not premised upon defendants setting their salary, or evaluating their work experience; it was premised upon the concern that their adherence to their religious beliefs would result in their removal as magistrates. Although AOC is entrusted with statutory authority to establish and evaluate judicial compliance with regulations, rules, and procedures,
 
 [1]
 
 the statutes cited above clearly show that AOC lacked the power, its memoranda notwithstanding, to sanction, suspend, or remove plaintiffs. As such, we hold that defendants lacked any authority to sanction, suspend, or remove plaintiffs.
 

 Because defendants lacked the actual authority to sanction, suspend, or remove plaintiffs, the allegations in plaintiffs' complaint, when viewed as true and considered in the light most favorable to plaintiffs, fail to demonstrate an injury that defendants were capable of inflicting
 
 *478
 
 upon plaintiffs, and by extension fails to show that such an injury could be redressed. If defendants could not remove plaintiffs, then defendants could not have harmed plaintiffs by such a removal, and therefore plaintiffs lacked standing to bring an action for this purported harm. We therefore hold that the trial court did not err in granting defendants' motion to dismiss for lack of standing.
 

 This argument is without merit.
 

 III. Motion to Dismiss for Failure to State a Claim
 

 In their second argument, plaintiffs contend that the trial court erred in granting defendants' motion to dismiss for failure to state a claim. Because we have already held that the trial court did not err in dismissing plaintiffs' complaint for lack of standing, we need not address this issue.
 

 AFFIRMED.
 

 Judges McCULLOUGH and TYSON concur.
 

 [1]
 

 See, e.g.
 
 , N.C. Gen. Stat. §§ 7A-171.1, 7A-171.2, 7A-174, 7A-177, 7A-343.