IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-328

Filed 21 November 2023

Guilford County, No. 14CVD359

LAURA LEIGH LINKER, Plaintiff,

v.

TIMOTHY LYON LINKER, Defendant,

v.

NANCY LYON BOLING, Intervenor.


Appeal by plaintiff from an order entered on 3 November 2022 by Judge Tabatha P. Holliday in Guilford County District Court. Heard in the Court of Appeals 18 October 2023.

> *Scott Law Group, PLLC, by Harvey W. Barbee, Jr., for plaintiff-appellant.*
> *Law Offices of Lee M. Cecil, by Lee M. Cecil, for intervenor-appellee.*

FLOOD, Judge.

Laura Linker ("Plaintiff") appeals from the trial court's order allowing Nancy Boling ("Intervenor") to intervene in the underlying custody action. For the reasons discussed below, we affirm.

## I. **Facts and Procedural Background**

On 23 January 2009, a child (the "minor child") was born to Plaintiff and Timothy Linker ("Defendant"). The family unit lived together for five years until Plaintiff and Defendant separated on 6 February 2014. On 10 March 2014, Plaintiff

filed the first of what would be numerous complaints and motions in the underlying action, seeking sole custody of the minor child. On 6 June 2014, Plaintiff and Defendant entered into a temporary consent order which granted Plaintiff primary physical custody and Defendant secondary custody. This temporary consent order stipulated that Defendant's overnight visits with the minor child would be supervised by paternal grandmother, Intervenor. On 19 August 2014, the 6 June temporary order was formalized, mirroring the terms of the temporary order with Plaintiff having primary custody and Defendant having secondary custody.

At some point following entry of the 19 August Order, a report was made to Guilford County Department of Social Services ("DSS") that Defendant had struck the minor child during a supervised visit. DSS investigated the allegation and found no credible evidence to support Defendant's alleged abuse of the minor child but *did* find Plaintiff had "severely emotionally abused" the minor child. Due to the "degree of alienation caused by" Plaintiff, "the parties agreed to a safety plan whereby the minor child was placed with [Intervenor]." Per the safety plan, Plaintiff and Defendant were given supervised visits with the minor child at a therapist's office.

On 7 January 2015, Defendant filed a motion for emergency custody, which included an affidavit from social worker Rosa Holland in which Ms. Holland stated it was DSS's opinion that Plaintiff "presents an immediate and serious threat to the safety of [the minor child] as evidenced by her continued emotional abuse[.]" The trial court entered an order for emergency custody granting sole physical and legal

custody to Defendant, "contingent on him agreeing to and following the DSS safety plan[.]" A return hearing was set for 16 January 2015.

Following the return hearing, the trial court entered a permanent custody order (the "April Order"), which made the following findings of fact:

> 3. From December 18, 2014 until February 23, 2015 (the day on which this [c]ourt orally made this Order), the minor child lived primarily with his paternal grandmother [Intervenor], and had visitation with both parents, more fully described below.
> . . . .
>
> 48. The parties agreed that the minor child would reside primarily with [Intervenor], and that the minor child would have supervised joint therapeutic visits with each parent at Lisa Partin's office. The parties signed a safety assessment implementing that plan.
>
> 49. Following the December 18, 2014 meeting, the minor child began residing with the paternal grandmother, [Intervenor].
> . . . .
>
> 58. The [Intervenor] has taken good care of the minor child.

Ultimately, the trial court granted Defendant sole legal custody and primary physical custody of the minor child, with Plaintiff being allowed two supervised, one-hour visits per week. After a few years, Plaintiff filed a motion to modify, and ultimately, the trial court increased Plaintiff's visitation pursuant to a permanent custody order entered on 1 August 2019 (the "August Order").

At some point between August 2019 and March 2022, Defendant was diagnosed with colon cancer. Given the circumstances, Plaintiff and Defendant orally agreed they would begin a "week on, week off" custody arrangement because it would be beneficial for the minor child. On 25 August 2022, Defendant filed a motion to modify the August Order. On 29 August 2022, Intervenor filed a motion to intervene in the pending custody action between Plaintiff and Defendant for the purpose of seeking visitation with the minor child. On 30 August 2022, Defendant died.

On 3 November 2022, Intervenor's motion to intervene was heard before the trial court, during which the court granted Intervenor's motion and found the following as fact:

> 4. On August 25, 2022, prior to his death, Defendant filed a Motion for Attorney's Fee and Motion to Modify Custody. These Motions . . . remained pending at the time of Defendant's death on August 30, 2022.
>
> 5. On August 29, 2022, also prior to the death of Defendant, Proposed Intervenor filed a Motion to Intervene, seeking visitation with [the minor child] based on N.C. Gen. Stat. §§ 50-13.2(b1) and 50-13.2(a).
> . . . .
>
> 7. Proposed Intervenor's Motion alleges that she has standing to seek visitation, in that she has a close bond with the minor child, which is in nature of a parent-child relationship, and that she exercised primary care of the minor child, with consent of the parties, [DSS], and the [c]ourt for several months as reflected by [c]ourt orders and DSS Safety Plans in this case.

The trial court concluded that there were "unresolved issues regarding child custody" pending at the time of Defendant's death, and Intervenor had standing as a "*de facto* party due to her prior involvement with the minor child as reflected by prior orders" of the trial court. Plaintiff appealed.

## II. Jurisdiction

The trial court's 3 November order is not a final judgment; accordingly, we note this appeal is interlocutory. Plaintiff requests this Court review the trial court's order allowing Intervenor to intervene on the basis that such a grant affects Plaintiff's substantial right pursuant to N.C. Gen. Stat. § 7(a)-27(b)(3)(a) (2021). In the alternative, Plaintiff petitions this Court for writ of certiorari in the event we determine she has not met her burden for immediate review of her interlocutory appeal. For the reasons discussed below, we allow Plaintiff's interlocutory appeal, dismiss Plaintiff's petition for writ of certiorari as moot, and deny Defendant's motion to dismiss.

"[W]hen an appeal is interlocutory, the appellant must include in its statement of grounds for appellate review 'sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.'" *Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 (2005)_(citation omitted).

> Admittedly, the "substantial right" test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the

procedural context in which the order from which appeal is
sought was entered.

*Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

This Court tends to view matters involving third party custody claims against natural parents as affecting the natural parents' substantial rights. *See In re Adoption of Shuler*, 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (allowing an interlocutory appeal on the basis that the trial court's order denying father's motion to dismiss a petition for adoption effectively eliminated his constitutional rights). Further, a natural parent's rights to the care, custody, and control of their children are among the oldest recognized fundamental rights and are protected by the Due Process Clause of the Fourteenth Amendment. *See Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49, 57 (2000).

Here, Plaintiff appeals from the trial court's grant of Intervenor's petition to intervene, a ruling that is not a final judgment but does allow for Intervenor to make a claim for third party custody or visitation with the minor child. Such a ruling would directly impact Plaintiff's substantial rights in the care, custody, and control of her minor child. *See Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060, 147 L. Ed. 2d at 57. For that reason, we elect to review Plaintiff's interlocutory appeal on the merits.

### III. <u>Analysis</u>

Plaintiff makes two arguments on appeal. Plaintiff argues the trial court erred when it (A) denied her motion to dismiss and (B) concluded as a matter of law that

Intervenor had previously been made a *de facto* party to the underlying custody action.

**A. Motion to Dismiss**

1. <u>Standard of Review</u>

This Court reviews a motion to dismiss for lack of standing *de novo*, viewing "the allegations as true and the supporting record in the light most favorable to the non-moving party." *Breedlove v. Warren*, 249 N.C. App. 472, 475, 790 S.E.2d 893, 895 (2016) (quoting *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008)). The trial court's conclusions of law are reviewed *de novo* on appeal. *In re Clark*, 76 N.C. App. 83, 86, 332 S.E.2d 196, 199 (1985); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) ("Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.").

2. <u>Analysis</u>

Plaintiff begins by contending the trial court erred when it denied her motion to dismiss pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. Plaintiff's motion to dismiss asserts the trial court lacked subject matter jurisdiction over the action because the underlying custody action abated upon the death of Defendant, leaving Intervenor with no action in which to intervene.

This Court has long held that actions between parents involving custody claims abate upon the death of one of the parties. *See, e.g., McDuffie v. Mitchell*, 155 N.C.

App. 587, 590, 573 S.E.2d 606, 608 (2002) ("Upon the death of the mother in the instant case, the ongoing case between the mother and father ended.") Typically, only the parents of a minor child may initiate actions for custody; however, a trial court may, in its discretion, grant visitation to a third party where it would promote the "interest and welfare" of the child, or to a grandparent with whom the minor child has a "substantial relationship." N.C. Gen. Stat. §§ 50-13.2(a), (b1) (2021).

Following the seminal case *McIntyre v. McIntyre*, 341 N.C. 629, 461 S.E.2d 745 (1995), a case in which the North Carolina Supreme Court considered whether grandparents had standing to sue for visitation with their grandchildren, "our Court has repeatedly held that grandparents only have statutory standing to sue for visitation . . . when the custody of a child [is] 'in issue' or 'being litigated' by the parents." *Alexander v. Alexander*, 276 N.C. App. 148, 151, 856 S.E.2d 136, 139 (2021) (quoting *Adams v. Langdon*, 264 N.C. App. 251, 257, 826 S.E.2d 236, 240 (2019)).

This Court considered facts similar to the case currently before us in *Alexander v. Alexander*, a case in which the mother of a minor child argued the trial court had no statutory authority to award the child's paternal grandparents visitation rights after the death of the minor child's father. *Alexander*, 276 N.C. App. at 149, 856 S.E.2d at 138. In *Alexander*, the father, upon learning of his cancer diagnosis, moved in with his parents, meaning the minor child lived with both the father and paternal grandparents during the father's custodial periods. Eventually, the father made a motion to modify the existing custody order. *Id.* at 149, 856 S.E.2d at 138. Shortly

thereafter, the paternal grandparents motioned to intervene, which the trial court granted. *Id.*, 856 S.E.2d at 138. After the death of the father, the trial court dismissed his motion to modify due to mootness. *Id.*, 856 S.E.2d at 138. Subsequently, the trial court awarded the mother physical and sole legal custody of the minor child but granted the paternal grandparents "permanent, extensive visitation rights." *Id.*, 856 S.E.2d at 138.

Upon review, this Court concluded the "[g]randparents had statutory standing to seek permanent visitation rights, notwithstanding that [the] [f]ather had died, as they had been allowed to intervene during a time when custody between Father and Mother was in dispute." *Id.* at 152, 856 S.E.2d at 140.

Conversely, this Court in *McDuffie v. Mitchell*, 155 N.C. App. 587, 573 S.E.2d 606 (2002), considered a maternal grandmother's motion to intervene in an underlying custody action that was filed *subsequent* to the death of the minor children's natural mother. This Court reasoned that a "[g]randparents' right to visitation is dependent on there [] being an ongoing case where custody is an issue between the parents" and therefore "[u]pon the death of the mother in this instant case, the ongoing case between the mother and father ended." *McDuffie*, 155 N.C. App. at 590, 573 S.E.2d at 608.

While this Court's analysis in both *Alexander* and *McDuffie* provide valuable insight into a grandparent's right to seek custody and visitation under our statutes, neither provide an answer to the question that is paramount to our current case. In

the case before us, we must determine what becomes of a motion to intervene that was timely filed prior to the death of a party, if at the time of the party's death, a trial court had yet to rule on the motion. Here, unlike the maternal grandmother's circumstances in *McDuffie*, Intervenor's motion to intervene was filed *prior* to Defendant's death. Additionally, unlike the paternal grandparents' circumstances in *Alexander*, Intervenor's motion was not granted until *after* the death of Defendant. It is this precise legal limbo we seek to clarify.

To answer this question, we consider the binding precedent set forth in *McIntyre*, 341 N.C. at 635, 461 S.E.2d at 750 (grandparents have standing to initiate suit only when custody is being litigated); *McDuffie,* 155 N.C. App. at 590, 573 S.E.2d at 608 (ongoing custody disputes abate upon the death of a parent); and *Alexander,* 276 N.C. App. at 152, 856 S.E.2d at 140 (grandparent standing as an intervenor continues past the death of a parent if the trial court's grant of the motion for intervention was made prior to the death).

On 25 August 2022, Defendant filed a motion to modify custody, which effectively re-opened the case; four days later, Intervenor filed a motion to intervene in the on-going case. The following day, on 30 August 2022, Defendant died. While the timeline may appear "dubious," as Plaintiff contends, Intervenor's motion falls within the scope of acceptable timing per our statutes and case law. *See* N.C. Gen. Stat. § 50-13.2(b1); *see also McDuffie,* 155 N.C. App. at 590, 573 S.E.2d at 608. Because Intervenor's motion was filed prior to Defendant's death and while the

underlying action was ongoing, we hold the trial court's determination that Intervenor had standing was proper; accordingly, so too was the trial court's dismissal of Plaintiff's 12(b)(1) motion.

## B. De Facto Party

Next, Plaintiff argues the trial court erred in finding and concluding as a matter of law that Intervenor had previously been made a *de facto* party to the underlying custody action.

Due to the interlocutory nature of Plaintiff's appeal, and because we have concluded that Intervenor has standing under both our statutes and case law, we need not reach the issue of whether the trial court improperly determined that Intervenor was a *de facto* party to the underlying case. *See Alexander,* 276 N.C. App. at 151, 856 S.E.2d at 140 ("[W]here grandparents *have intervened* or at least have been made de facto parties while the parents are disputing custody of a child, a resolution or abatement of the parents' custody dispute does not cut off the grandparents' statutory right to have their claim for visitation rights heard." (emphasis added)).

## IV. Conclusion

Because custody of the minor child was being litigated at the time of Intervenor's motion to intervene, the trial court correctly denied Plaintiff's motion to dismiss for lack of standing.

AFFIRMED.

Judges COLLINS and GORE concur.